UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE UNDERWOOD,<br><br>    Plaintiff,<br><br>v.<br><br>CDCR, et al.,<br><br>    Defendants. | Case No. 24-cv-04399-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 17 |

Before the Court is Defendants Craig Koenig and the California Department of Corrections and Rehabilitation's ("CDCR") (together, "Defendants") motion to dismiss. ECF No. 17. The Court will deny the motion.

I.    **BACKGROUND**[1]

Plaintiff Willie Underwood is an African-American male incarcerated at Correctional Training Facility ("CTF") in Soledad. ECF No. 1 ¶ 11. Defendants are the CDCR, Craig Koenig (the former warden of CTF), four unknown CDCR officials to be personally identified, and Does 1–10, an unknown number of additional CDCR state custodial officials. *Id.* ¶¶ 12–17.

This action stems from an alleged incident—"Operation Akili"—that occurred on July 20, 2020 at CTF. Because the facts are well-known to the parties and the Court has summarized the Plaintiffs' allegations in detail in its prior, related motion to dismiss order, *Adams v. California Dep't of Corr. & Rehab.* ("*Adams*"), No. 21-cv-08545-JST, ECF No. 33, the Court will not repeat them here.

To summarize, Underwood seeks redress for alleged injuries he—along with dozens of

---

[1] For the purpose of resolving Defendants' motion to dismiss, the Court accepts as true the allegations in the complaint, ECF No. 1. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

other Black incarcerated individuals—suffered as a result of Operation Akili. On July 20, 2020, four officers entered Underwood's cell while he was asleep and forcibly dragged him out of his bed. ECF No. 1 ¶ 26. As Underwood got to his feet, one of the officers slammed him up against the wall with the assistance of another officer. *Id.* Underwood was then violently restrained and transported to the dining hall for holding and interrogation. *Id.* ¶¶ 28–30. Underwood suffered injuries to his back and was left in pain for a substantial period following the incident. *Id.* ¶ 31. Throughout the incident—which lasted several hours—the officers did not employ any safety precautions relating to the COVID-19 pandemic, including ignoring the use of social distancing or masks. *Id*. ¶¶ 28, 30, 32, 38–40.

Underwood alleges that Koenig "acted as the singular leader, and top prison official, in terms of carrying out the July 20, 2020 Operation Akili raid on the inmates." *Id.* ¶ 15. Koenig, "along with approximately 40 guards, executed [Operation Akili] with the intent and effect of sadistically injuring, terrorizing, and humiliating approximately 100 sleeping African-American inmates." *Id.* ¶ 1.

Underwood alleges a violation of the Eighth Amendment by cruel and unusual punishment, 42 U.S.C. § 1983, against the individual defendants and alleges physical attack based on racial discrimination, 42 U.S.C. § 2000(d), against the CDCR. *Id.* at 16–31.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

1 claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel*, 393 F.3d at 1072.

## IV. DISCUSSION

"Under Section 1983, supervisors cannot be held liable for the acts of their reports under a respondeat superior theory." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). Supervisors can, however, "be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000), *as amended* (Oct. 31, 2000).

Defendants argue that the Section 1983 claim against Koenig should be dismissed because the complaint does not sufficiently allege that he "subjected [Underwood] to any force" or that he is liable as a supervisor through his own individual actions. *See* ECF No. 17 at 5–7.

Underwood counters that the complaint alleges either "expressly or by inference" facts sufficiently specific as to Koenig's role in causing Underwood's injuries, including that (1) as the leader of Operation Akili, "Koenig was naturally the architect of its operational plan," ECF No. 19 at 2; (2) Koenig "personally carried out the raid, as its leader, and was therefore personally present when it occurred, to assure that it was carried out according to plan," *id.* at 3; and (3) Koenig "failed to personally stop guards from committing violence committed in his presence" despite being the lead supervisor of the raid, *id.* at 4. Defendants respond that there are no specific allegations that Koenig was the "architect" of Operation Akili or that he planned Operation Akili in the actual complaint. *See* ECF No. 23 at 2.

Although the allegations in the complaint do not quite rise to the level depicted in

Underwood's opposition brief, the Court finds that the complaint sufficiently pleads allegations against Koenig that he played a direct role in organizing and executing Operation Akili and thus in causing Underwood's injuries. For example, the Complaint alleges that Koenig was personally involved and present in executing the raid, that he was the "singular leader" of the operation, and that Operation Akili was designed to injure African-Americans. *See* ECF No. 1 ¶ 1 ("The warden, along with approximately 40 guards, executed a 3 am raid dubbed 'Operation Akili' with the intent and effect of sadistically injuring, terrorizing, and humiliating approximately 100 sleeping African-American inmates."); *id.* ¶ 4 ("Operation Akili predictably and by design became a 'super-spreader' disease event . . . ."); *id.* ¶ 15 ("Defendant Craig Koenig . . . acted as the singular leader, and top prison official, in terms of carrying out the July 20, 2020 Operation Akili raid on the inmates."); *id.* ¶ 21 ("[Defendants] shared a common plan and scheme to carry out a raid exclusively targeting African-Americans . . . ."). Together, these allegations suffice to state a Section 1983 claim against Koenig for his direct action and inaction leading to the alleged excessive force inflicted upon Underwood.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: May 6, 2025

_____
JON S. TIGAR
United States District Judge

4